ALDEN F. ABBOTT
General Counsel

SARAH SCHROEDER, Cal. Bar No. 221528
ROBERTA TONELLI, Cal. Bar No. 278738
EVAN ROSE, Cal. Bar No. 253478
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
sschroeder@ftc.gov, rtonelli@ftc.gov, erose@ftc.gov
Tel: (415) 848-5100; Fax: (415) 848-5184

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN FINANCIAL BENEFITS CENTER, a corporation, also d/b/a AFB and AF STUDENT SERVICES;<br><br>AMERITECH FINANCIAL, a corporation;<br><br>FINANCIAL EDUCATION BENEFITS CENTER, a corporation; and<br><br>BRANDON DEMOND FRERE, individually and as an officer of AMERICAN FINANCIAL BENEFITS CENTER, AMERITECH FINANCIAL, and FINANCIAL EDUCATION BENEFITS CENTER,<br><br>Defendants. | Case No. 18-cv-00806-SBA<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Date: December 6, 2018<br>Time: 3:00 p.m.<br>Via telephone: (510) 879-3550<br><br>Date Action Filed: February 7, 2018 |

**Joint Case Management Statement and [Proposed] Order**
**4:18-CV-00806-SBA**

4842-0939-3537.3

Plaintiff Federal Trade Commission ("Plaintiff" or FTC") and Defendants American Financial Benefits Center ("AFBC"), Ameritech Financial ("Ameritech"), Financial Education Benefits Center ("FEBC"), and Brandon Frere ("Frere" and together with AFBC, Ameritech and FEBC, "Defendants") jointly submit this Joint Case Management Statement and Proposed Order pursuant to this Court's Standing Order and the Standing Order for All Judges of the Northern District of California dated January 17, 2017 and Civil Local Rule 16-9.

1. Jurisdiction & Service

*The basis for the court's jurisdiction and whether any parties remain to be served.*

The FTC has properly served Defendants. No issues or objections exist with regard to personal jurisdiction. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 6102(c), and 6105(b). Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

2. Facts

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

a. *Plaintiff's Chronology of the Facts*:

Since 2014, Defendants have operated a sprawling student loan debt relief enterprise. To lure consumers, Defendants sent mailers claiming consumers were eligible for federal programs that would permanently reduce their monthly loan payments or result in total loan forgiveness. Defendants then charged consumers an advance fee of between $600 and $800 purportedly to enroll them in these federal programs. In addition to charging illegal advance fees, Defendants collected and retained monthly fees, ranging from $49 to $99, which consumers believed were being applied to pay down their loans. In reality, Defendants were charging consumers for a "financial education" membership unrelated to their student loans.

The FTC has submitted overwhelming evidence to the Court of Defendants' scheme, including **over 2,300 consumer complaints**, recordings and transcripts of consumer calls that capture Defendants' misrepresentations, declarations from consumers victimized by Defendants, statements from over twenty of Defendants' former employees that the company is a "scam" or engaged in questionable activity, Defendants' deceptive mailers, and financial records indicating that Defendants have dissipated their assets, including sending funds offshore. *See* FTC's

**Joint Case Management Statement and [Proposed] Order**　　　　**Page 1**
**4:18-CV-00806-SBA**

4842-0939-3537.3

Motion for Preliminary Injunction (Dkt. 22); Reply in Support of Motion for Preliminary Injunction (Dkt. 103); Attachment A to Declaration of Kelly Ortiz (Dkt. 165-1).

This and other evidence obtained by the FTC shows that Defendants violated Section 5 of the Federal Trade Commission Act ("FTC Act") and various provisions of the Telemarketing Sales Rule ("TSR"). Specifically, Defendants misrepresented that (1) consumers qualified for programs that would permanently reduce their student loan payment or lead to total loan forgiveness; and (2) consumers' funds were going towards their student loan payments. Defendants also charged consumers advance fees, in violation of the TSR. <u>Defendants continue to collect monthly payments from deceived consumers</u>. A preliminary injunction is necessary to halt ongoing consumer harm and preserve assets for consumer redress, especially in light of Defendants' refusal to provide full refunds to consumers who cancelled their service.

    b. *Defendants' Chronology of the Facts*:

Defendants incorporate the factual summary from the parties' prior Joint Case Management Conference Statement. Dkt. No. 184.

Since that time, the Court has issued an Order granting the FTC's requested preliminary injunction, along with the Preliminary Injunction Order. Doc. Nos. 186 and 187. The Court also appointed a receiver, Thomas McNamara. *Ibid*. One of Mr. McNamara's obligations is to "protect the interests of consumers who have transacted business with the Corporate Defendants." Dkt. No. 187, § VI.J. Defense counsel has heard from employees of the Corporate Defendants that although the Receiver had made arrangements for customer service employees to contact 253 borrowers with immediate submission deadlines and advise them to contact their loan servicers. Unfortunately Mr. McNamara stated that he had no plans to otherwise communicate with approximately 1,200 consumers who are scheduled for a "status check" which requires a detailed review of the status of consumers' repayment program applications or re-certifications, default rehabilitations, or other time-sensitive matters that may affect their loan repayment obligations. If these services are not performed, it is likely that hundreds of consumers will have their monthly student loan payment increase by hundreds of dollars per month starting in December 2018 or January 2019.

Further, while the Receiver is insisting that Mr. Frere return funds distributed from AFBC and FEBC's accounts on November 29, 2018 – before the Order granting the Preliminary Injunction was issued – at the same time the Receiver has stated that he will not pay pre-receivership expenses, including payroll for the Corporate Defendants' employees, which is due to be paid on December 7, 2018.

3. Legal Issues

*A brief statement, without extended legal argument, of the disputed points of law.*

a. *Plaintiff's Position*:

Defendants assert that the TSR does not apply to their business because they simply provide "document preparation" services to consumers. This Court, relying on strong precedent, has already concluded that "Defendants' services fall within [the TSR's definition of a "debt relief service"], as they purport to alter the terms of payment or other terms of consumers' debt. Order Denying Defendants' Motion to Dismiss (Dkt. 157) at 17 ("Defendants' characterization of their services as mere document preparation and processing, to the exclusion of any service defined as debt relief under the TSR, is unavailing.").

b. *Defendants' Position*:

Although the Court denied Defendants' motion to dismiss the complaint, including on the grounds that their services fall within the TSR's definition of debt relief services, that finding was made in response to the Rule 12(b)(6) motion and not on a full evidentiary record. When the record is fully developed, it will be apparent that the TSR was never intended to apply to student loan debt. The TSR also permits companies providing debt relief services to accept advance payments so long as they meet certain criteria. Here, out of an abundance of caution, Defendants implemented third-party escrow accounts owned by the consumers, to comply with the TSR.

4. Motions

*All prior and pending motions, their current status, and any anticipated motions.*

On March 2, 2018, the FTC filed a Motion for Preliminary Injunction (Dkt. 22), requesting that this Court enter an order appointing a neutral receiver to assume control of the corporate defendants, secure their assets, and determine whether the business can operate

**Joint Case Management Statement and [Proposed] Order**     **Page 3**
**4:18-CV-00806-SBA**

4842-0939-3537.3

lawfully. On March 30, 2018, Defendants filed an Opposition, (Dkt. 79), and on April 19, 2018, the FTC filed a reply (Dkt. 103). On November 29, 2018, the Court issued an Order granting the FTC's requested preliminary injunction, along with the Preliminary Injunction Order. Dkt. Nos. 186 and 187.

On April 23, 2018, Defendants filed a Motion to Dismiss the FTC's Complaint (Dkt. 117). The Court denied Defendants' motion to dismiss on August 8, 2018 (Dkt. 157).

On June 14, 2018, Defendants filed an Administrative Motion to Consider Additional Evidence in Ruling on FTC's Motion for Preliminary Injunction, or, in the Alternative, to Hold Evidentiary Hearing (Dkt. 140). On June 18, 2018, the FTC filed an opposition (Dkt. 142). On June 20, 2018, Defendants filed a motion seeking leave to reply (Dkt. 146), which the FTC opposed (Dkt. 147).

On September 7, 2018, the FTC filed an administrative motion to set a case management conference. Dkt. 164. The Court set a case management conference for October 31, 2018.

On September 18, 2018, the FTC filed a Motion to Strike Defendants' Laches, Estoppel, and Offset Affirmative Defenses (Dkt. 169). Defendants filed an opposition on October 2, 2018 (Dkt. 175), and the FTC filed a reply on October 9, 2018 (Dkt. 178). This Court took the hearing off calendar and determined that the motion was appropriate for resolution without oral argument. Dkt. No. 183.

Depending on the outcome of the Court's rulings on the pending motions, Defendants and Plaintiff anticipate filing motions for summary judgment at the appropriate time.

5. <u>Amendment of Pleadings</u>
*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

The parties do not anticipate amending the Complaint or Answer.

6. <u>Evidence Preservation</u>
*A brief report certifying that the parties have reviewed the ESI Guidelines.*

The parties have reviewed the ESI Guidelines, and met-and-conferred per FRCP 26(f). Currently, the Receiver is in possession of all documents and records related to the Corporate Defendants, and the parties understand that he is imaging all corporate records in existence at the

time of the Preliminary Injunction Order.

7. <u>Disclosures</u>
*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26.*

The parties have exchanged initial disclosures.

8. <u>Discovery</u>
*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*

   a. *Discovery Agreement*

The parties have reached an agreement regarding certain discovery issues, which is codified in the parties' Joint Rule 26(f) Report (Dkt. 124).

   b. *Discovery Taken to Date*

*Plaintiff's position*: The FTC has produced all relevant and non-privileged material to Defendants, totaling over 5,500 documents. The FTC is preparing a discovery letter brief regarding Defendants' refusal to produce relevant documents in a readable format, including corporate email, consumer complaints, and correspondence with consumers. Defendants have deposed FTC investigator Kelly Ortiz and Daniel Hamilton, another witness for the FTC.

*Defendant's position*: Before the litigation commenced, Defendants supplied the FTC with over 312,000 recordings of calls with consumers, dating from March-September 2017. Defendants have since produced over 200,000 documents and provided the FTC with access to Defendants' Salesforce client database.

Defendants have served written discovery to which the FTC has responded, in some cases refusing to produce documents. Defendants disagree that the FTC has produced "all relevant and non-privileged material to Defendants" in its possession. Finally, both parties have served document subpoenas on third party witnesses.

   c. *Number of Depositions*

*Plaintiff's Position*: The FTC recommends that each side (Plaintiff and Defendants) be limited to 12 depositions, not including depositions of expert witnesses. The parties may want to depose the same witnesses, including Defendants' former employees, and 24 depositions total is enough to determine whether Defendants' business practices violated the law. Because the Court

can consider written statements from consumers, the FTC intends to call only 1-2 consumer witnesses at trial. *FTC v. Cyberspace.com*, No. C00-1806L, 2002 U.S. Dist. LEXIS 25565, at *13 n. 5 (W.D. Wash. July 10, 2002), *aff'd*, 453 F.3d 1196 (9th Cir. 2006). Thus, Defendants do not need to disrupt the lives of ordinary citizens by deposing dozens of consumers.

*Defendants' position:* Defendants recommend 25 depositions for each side, excluding depositions of expert witnesses. Given that Defendants have assisted over 40,000 customers with student loan document preparation, and that both parties have sought extensive discovery from third parties, a total of 50 depositions of fact witnesses is not unreasonable. Defendants note that *Cyberspace.com* was decided on summary judgment.

d. <u>Proposed Schedule</u>

| **Deadline** | **Date** |
| --- | --- |
| Close of fact discovery | September 20, 2019 |
| Initial expert reports and related disclosures | November 1, 2019 |
| Rebuttal expert reports and related disclosures | January 17, 2020 |
| Close of expert discovery | February 21, 2020 |
| Deadline for Dispositive Motions | March 27, 2020 |
| Pretrial Conference | July 17, 2020 |
| Trial | July 31, 2020 |

9. <u>Class Actions</u>

*If a class action, a proposal for how and when the class will be certified.*

This is not applicable.

10. <u>Related Cases</u>

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

a. <u>Plaintiff's Position</u>:

Defendants filed a pre-emptive lawsuit against the FTC after learning that the FTC was investigating them for possible violations of the FTC Act and related rules. *See American Financial Benefits Center v. Federal Trade Commission*, No. 4:18-cv-00806-SBA (N.D. Cal.

Aug. 18, 2017). On May 29, 2018, the Court dismissed Defendants' complaint with prejudice. Order Granting Motion to Dismiss, at 18 (Dkt. 51) (noting "fundamental and fatal deficiencies in [the] complaint"). However, Defendants continue to tell consumers that their dismissed lawsuit "remains open in the northern district of California." *See* FTC's Administrative Motion to Schedule a Case Management Conference (Dkt. 164) at 2, fn. 3. The FTC respectfully requests that the Court instruct Defendants to stop misrepresenting the procedural posture of this case.

    b. *Defendants' Position*:

Following the Court's dismissal of the Companies' lawsuit against the FTC, plaintiffs in that action filed a notice of appeal.

11. <u>Relief</u>
*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated.*

    a. *Plaintiff's Position*:

The FTC seeks the imposition of equitable relief (not legal damages), including a permanent injunction banning Defendants from offering debt relief services to consumers and an award of equitable monetary relief, in the form of consumer redress and/or disgorgement.

District courts have broad authority under the FTC Act to "'grant any ancillary relief necessary to accomplish complete justice,' including the power to order restitution." *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) (citation omitted). Because the FTC Act is designed to protect consumers from economic injuries, courts have often awarded the full amount lost by consumers. *Id.* at 932. For violations of the FTC Act, consumer loss is calculated by the amount of money paid by the consumers, less any refunds made. *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 603 (9th Cir. 2016).

Defendants argue that the Court should offset any monetary award by alleged benefits that consumers received from federal student loan assistance programs. As described in the FTC's Motion to Strike Defendants' Defenses (Dkt. 169) and supporting Reply (Dkt. 178), the Ninth Circuit has definitively stated that offsets for consumer benefits are not appropriate in FTC cases involving deception. *See FTC v. Dantuma*, Case No. 17-15600, 2018 U.S. App. LEXIS 24893, at *4 (9th Cir. Aug. 31, 2018). Based on Defendants' bank records, the FTC estimates

that consumer injury in this case is approximately $60 million, minus chargebacks and refunds.

      b. *Defendants' Position*:

Defendants deny that the FTC is entitled to any relief. Even if it were, the alleged consumer injury is substantially less than $60 million (minus chargebacks and refunds). The FTC claims that it is seeking "consumer redress and/or disgorgement of ill-gotten gains." Where it has expressly disavowed seeking damages, any recovery is limited to ancillary equitable relief. Any greater recovery would be a windfall. Not only does the FTC assume that every customer was injured, its calculations do not consider the benefits consumers received, *i.e.*, savings on their student loan payments of approximately $8 million/month, against which Defendants are entitled to an offset. *See FTC v. Lights of Am.*, Case No. SACV 10-1333, 2012 WL 13064911, *7 (C.D. Cal. April 25, 2012); *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 603 (9th Cir. 2016) (if the "unjust gains [are not] measured by the consumers' total losses; that would amount to an award of damages, a remedy . . . precluded under § 13(b).").

## 12. Settlement and ADR
*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

The parties held a settlement conference with Judge Beeler on July 2, 2018, but were unable to reach an agreement. The parties are currently not engaged in settlement discussions.

    a. *Plaintiff's Position*: Defendants have not made a serious settlement offer and are continuing to deceive consumers. FTC staff believes Defendants will not engage in realistic settlement discussions until the Court rules on the FTC's Motion for Preliminary Injunction.

    b. *Defendants' Position*: Defendants remain open to discussing settlement of this action, however, they do not believe that the FTC has engaged in realistic settlement talks. On November 13, 2018 Defendants proposed the parties re-engage in settlement negotiations with a private mediator (retired judge) to be paid for by Defendants. The FTC has indicated that it will mediate only if certain preconditions are met. Defendants, however, remain willing to engage in mediation without any preconditions.

## 13. Consent to Magistrate Judge for All Purposes
*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.* \_\_\_\_ YES \_\_ NO

The parties have not consented to a Magistrate Judge.

## 14. Other References

*Whether the case is suitable for reference to binding arbitration or a special master.*

Not Applicable.

## 15. Narrowing of Issues

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

    a. *Plaintiff's Position*:

Instead of submitting testimony for potentially thousands of consumers, the FTC recommends that the Court consider a representative sample of Defendants' client files, including the initial sales call, correspondence, student loan status, and refund request.

    b. *Defendants' Position*:

Defendants are concerned that any sampling should be conducted in a scientifically valid manner. Accordingly, they have attempted to work with the FTC to develop a protocol for identifying a representative sample set.

## 16. Expedited Trial Procedure

*Whether this is the type of case that can be handled under the Expedited Trial Procedure.*

This case cannot be handled under the Expedited Trial Procedure of General Order 64.

## 18. Trial

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

This case will be tried to a judge. The parties anticipate that the trial will take 12 days.

## 19. Disclosure of Non-party Interested Entities or Persons

*Whether each party has filed the "Certification of Interested Entities or Persons."*

The parties have filed the Certificate of Interested Entities or Parties.

## 20. Professional Conduct

*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

The attorneys for the parties have reviewed the Guidelines.

## 21. Other

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

*Plaintiff's Position*

On December 5, 2018, Individual Defendant Brandon Frere was arrested as he attempted

**Joint Case Management Statement and [Proposed] Order**      Page 9
**4:18-CV-00806-SBA**

4842-0939-3537.3

to leave the country.  He will appear before a Magistrate Judge on December 6, 2018.

*Defendants' Position*:

Defendants opposed the appointment of a receiver (Dkt. 79).   Defendants believe the initial actions of the appointed Receiver have effectively ended the business and will harm consumers.

| | |
|---|---|
| Dated:  December 5, 2018 | FEDERAL TRADE COMMISSION |
| | /s/ Sarah Schroeder |
| | Sarah Schroeder |
| | Roberta Tonelli |
| | Evan Rose |
| | Attorneys for Plaintiff |
| Dated: December 5, 2018 | ROPERS, MAJESKI, KOHN & BENTLEY |
| | /s/ Nicole S. Healy |
| | TODD A. ROBERTS |
| | NICOLE S. HEALY |
| | EDWIN B. BARNES |
| | Attorneys for Defendants AMERICAN FINANCIAL BENEFITS CENTER, AMERITECH FINANCIAL, FINANCIAL EDUCATION BENEFITS CENTER, and BRANDON DEMOND FRERE |

Pursuant to Civ. L.R. 5-1(i)(3), the filer attests that concurrence in the filing of the document has been obtained from the other signatory above.

/s/ Nicole S. Healy
Nicole S. Healy

## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated: _____    _____
Hon. Saundra Brown Armstrong
United States District Judge
Northern District of California