```
                                           PAGES 1 - 13

              UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

       BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY

FEDERAL TRADE COMMISSION,      )
                               )
           PLAINTIFF,          )
                               )
  VS.                          ) NO. 18-CV-00806
                               )
AMERICAN FINANCIAL BENEFITS    )
CENTER, ET AL.,                )
                               )  SAN FRANCISCO, CALIFORNIA
           DEFENDANTS.         )  THURSDAY
                               )  DECEMBER 20, 2018
_____)
```

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  9:29 A.M. – 9:43 A.M.**

**APPEARANCES:**

**FOR RECEIVER**          MCNAMARA SMITH LLP
                          655 WEST BROADWAY, SUITE 1600
                          SAN DIEGO, CALIFORNIA 92101
                    **BY: THOMAS W. MCNAMARA, ESQUIRE**


**FOR DEFENDANT FRERE**   ROPERS MAJESKI KOHN & BENTLEY
                          1001 MARSHALL STREET, SUITE 500
                          REDWOOD CITY, CALIFORNIA 94063
                    **BY: NICOLE S. HEALY, ESQUIRE**



*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                *RETIRED OFFICIAL COURT REPORTER, USDC*

```
 1   THURSDAY, DECEMBER 20, 2018                          9:29 A.M.
 2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO
 3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
 4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)
 5                              ---O0O---
 6                             PROCEEDINGS
 7             THE CLERK:  CALLING CIVIL ACTION C-18-0806, FTC
 8   VERSUS AMERICAN FINANCIAL BENEFITS CENTER.
 9             MR. McNAMARA:  GOOD MORNING, YOUR HONOR.  TOM
10   MCNAMARA.  I'M THE RECEIVER AND MOVANT IN THIS CASE.
11             THE COURT:  GOOD MORNING.
12             MS. HEALY:  AND GOOD MORNING, YOUR HONOR.  NICOLE
13   HEALY FOR MR. FRERE.
14             THE COURT:  GOOD MORNING.
15             OKAY.  SO THE RECEIVER MOVED FOR A FINDING OF
16   CONTEMPT AND YOUR ORIGINAL MOVING PAPERS SEEM TO BE BASED ON
17   THE TRANSFERS THAT TOOK PLACE WITHIN JUST A COUPLE OF HOURS
18   BEFORE JUDGE ARMSTRONG ISSUED HER ORDER.  BUT THEN YOUR REPLY
19   SEEMED TO TAKE A DIFFERENT TACK, WHICH IS THAT THOSE TRANSFERS
20   WERE FRAUDULENT TRANSFERS UNDER CIVIL CODE SECTION 3439.04,
21   AND, THEREFORE, WHEN, AFTER THE RECEIVER ASKED FOR THE MONEY
22   BACK, MR. FRERE SHOULD HAVE GIVEN THEM BACK.  I THINK HE SHOULD
23   GIVE THEM BACK.
24             BUT I DON'T KNOW THAT I COULD FIND THAT'S CIVIL
25   CONTEMPT, BECAUSE WHAT YOU DON'T CITE ARE ANY CASES -- I MEAN,
```

```
 1   YOU HAVE TO MAKE FINDINGS.  USUALLY THERE'S A CLAIM OF A
 2   FRAUDULENT TRANSFER.  I JUST DON'T, IN THIS CONTEXT, HAVE ANY
 3   FINDING THAT -- WELL, FIRST OF ALL, IT WASN'T MADE TO YOUR
 4   REPLY, RIGHT?
 5            MR. McNAMARA:  I DISAGREE, YOUR HONOR.  MAYBE NOT AS
 6   ARTICULATELY AS WE SHOULD HAVE, BUT WE IDENTIFIED -- AND I WILL
 7   AGREE OUR PRIMARY ARGUMENT WAS THE CONTEMPT ON THE DAY OF, BUT
 8   I WAS -- AS YOU WERE TALKING, I WAS TRYING TO GO BACK.
 9            THE COURT:  WHERE DID YOU IDENTIFY CIVIL CODE SECTION
10   3439.04 AND EVEN FRAUDULENT TRANSFERS IN YOUR MOVING PAPERS?
11            MR. McNAMARA:  I DON'T KNOW THAT WE DID.
12            THE COURT:  YOU DIDN'T.
13            MR. McNAMARA:  BUT I IDENTIFIED BOTH THE GROUNDS FOR
14   THE CONTEMPT BEING THE DAY OF.
15            THE COURT:  YES.
16            MR. McNAMARA:  AND REFUSAL TO RETURN.
17            THE COURT:  YES.
18            MR. McNAMARA:  I DIDN'T ARTICULATE AS WELL AS I
19   SHOULD HAVE.  WE WERE MOVING PRETTY QUICKLY, AND I APOLOGIZE TO
20   THE COURT FOR THAT.  AND I'M GLAD TO GO GIVE THE DEFENSE AN
21   OPPORTUNITY TO BRIEF THAT, IF YOU FEEL --
22            THE COURT:  WELL, I THINK YOU ALSO HAVE TO BRIEF IT
23   AS WELL, BECAUSE WHAT I DON'T UNDERSTAND EVEN PROCEDURALLY IS
24   HOW DOES THAT -- LIKE, CAN YOU MAKE A FINDING OF FRAUDULENT
25   TRANSFER WITHOUT THERE BEING A CLAIM OF FRAUDULENT TRANSFER,
```

1 SUCH THAT THEN SOMEONE CAN THEN BE FOUND IN CIVIL CONTEMPT?

2 **MR. McNAMARA:** I BELIEVE SO.

3 **THE COURT:** SO THEN MAYBE YOU NEED TO BRIEF FIRST,
4 RIGHT? BECAUSE WHAT I HAVE IS A FOOTNOTE THAT SAYS IT'S -- IT
5 QUALIFIES AS A FRAUDULENT TRANSFER. I AGREE UNDER THOSE
6 FACTORS THAT WOULD CERTAINLY -- CERTAINLY AN INFERENCE THAT
7 COULD BE DRAWN, NO QUESTION. BUT I JUST DON'T KNOW IN TERMS OF
8 THEN FINDING CIVIL CONTEMPT. DO YOU HAVE TO, LIKE, MAKE A
9 CLAIM? I DON'T KNOW.

10 **MR. McNAMARA:** THE WAY I WOULD VIEW IT -- I'M HAPPY
11 TO GO BACK AND BRIEF THE FRAUDULENT TRANSFER ASPECT OF IT.
12 BUT, ESSENTIALLY, IT GOES LIKE THIS: IF WE ASSUME THERE'S A
13 FRAUDULENT TRANSFER -- AND I THINK ALL THE FACTS SUGGEST THERE
14 ABSOLUTELY WERE GIVEN THE CONDUCT, THE FRENETIC, YOU KNOW,
15 WIRING OUT JUST BEFORE THE ORDER, THERE WAS AN EFFORT TO
16 DEPLETE THE ACCOUNTS AND TAKE THAT MONEY TO (INDISCERNIBLE).

17 SO THE ORDER -- THE PRELIMINARY INJUNCTION REQUIRES
18 ANYBODY WHO HAS CORPORATE ASSETS TO RETURN THOSE UPON REQUEST
19 AND THAT'S WHERE WE'RE AT --

20 **THE COURT:** NO, NO, I UNDERSTAND THAT. BUT -- BUT
21 THEY'RE COOPERATE ASSETS UPON A FINDING THAT IT WAS A
22 FRAUDULENT TRANSFER.

23 AND, BY THE WAY, WHETHER IT'S VOID OR VOIDABLE, THE
24 STATUTE ITSELF THAT YOU CITE SAYS "VOIDABLE." THE CASES THAT
25 YOU CITE, ALMOST ALL OF THEM ARE BEFORE THE STATUTE, LIKE FROM

1   1940 OR SOMETHING, EXCEPT FOR ONE, THE BANKRUPTCY CASE, BUT ON
2   APPEAL THE NINTH CIRCUIT SAID WE DON'T HAVE TO DECIDE IF IT'S
3   VOID OR VOIDABLE. SO THAT'S A DIFFERENT ISSUE. SO IT'S
4   VOIDABLE, DOESN'T A JUDGE THEN HAVE TO SAY THAT AND DOES
5   THAT -- DO YOU HAVE TO, LIKE, MAKE A -- USUALLY, THERE'S CLAIM
6   OF FRAUDULENT TRANSFER, RIGHT?
7           **MR. McNAMARA:** WELL, YEAH, I MEAN -- BUT, YOU KNOW,
8   THE WHOLE POINT OF A PRELIMINARY INJUNCTION ORDER AND THE
9   POWERS THE COURT, YOU KNOW, GIVES TO THE RECEIVER IS TO AVOID
10  FRAUD. IT'S TO GET THOSE ASSETS AND MOVE QUICKLY FOR THE
11  BENEFIT OF THE RECEIVERSHIP ESTATE SO THAT YOU DON'T HAVE
12  ESSENTIALLY DEPLETION OF THE ASSETS WHEN A PARTY THINKS IT'S TO
13  THEIR INTEREST.
14          I GET IT. I'M HAPPY TO BRIEF THE FRAUDULENT TRANSFER
15  BECAUSE I THINK THE FACTS ARE GOING TO --
16          **THE COURT:** AND, ALSO, THAT I CAN MAKE THAT SORT OF
17  FINDING WITHOUT THERE BEING A CLAIM.
18          **MR. McNAMARA:** OKAY, RIGHT.
19          **THE COURT:** YOU SEE WHAT I'M SAYING?
20          **MR. McNAMARA:** YEAH, I UNDERSTAND.
21          **THE COURT:** YEAH. BUT, BUT -- BUT MAYBE WE CAN AVOID
22  THIS. WHY DOESN'T YOUR CLIENT JUST GIVE MONEY BACK? AND IS
23  MR. SWANSON, LIKE, AWARE OF THIS? HE'S NOW FACING CRIMINAL
24  CHARGES. THIS DOES NOT LOOK GOOD FOR THEM.
25          AND WHY HAVEN'T THE PARENTS GIVEN THE MONEY BACK, AND

```
 1   WHY HAVEN'T THE BROTHER GIVEN THE MONEY BACK?  THEY'RE BOTH
 2   SURETIES ON THE BOND.  MAYBE WE CAN HAVE AN EVIDENTIARY HEARING
 3   AND HAVE THEM COME IN, AND I'M NOT SURE MR. SWANSON OR YOUR
 4   CLIENT WANTS ANY OF THIS TO HAPPEN.
 5           MS. HEALY:  YOUR HONOR, AGAIN, I DON'T REPRESENT
 6   ANYONE OTHER THAN MR. FRERE.  I DO KNOW THAT MR. SWANSON IS
 7   AWARE OF THE FACTS AND CIRCUMSTANCES HERE.
 8           THE RECEIVER IS NOT GIVING CREDIT TO THE FACT THAT
 9   MR. FRERE HAS, IN FACT, RETURNED $83,000 ALREADY AND HAS MADE
10   EFFORTS TO RETURN THE OTHER 60- TO 65,000 --
11           THE COURT:  WHY HAVEN'T THE PARENTS GIVEN MONEY BACK?
12           MS. HEALY:  YOUR HONOR, I DON'T REPRESENT THE
13   PARENTS.
14           THE COURT:  NO, I UNDERSTAND, BUT YOU REPRESENT THE
15   SON WHO WIRED THE MONEY TO THEM.  WHY ISN'T IT BACK?  I
16   UNDERSTAND YOU DON'T REPRESENT THEM.  WE CAN ISSUE A SUBPOENA
17   TO THEM, AND I CAN HAVE THEM COME IN.  WHY HASN'T THE BROTHER,
18   BOTH OF WHOM SIGNED ON TO THE BOND.  THAT ALL CREATES
19   INFERENCES AND FACTS.
20           IN OTHER WORDS, I UNDERSTAND THERE'S THIS
21   TECHNICALITY, BUT LET'S KIND OF LOOK AT THE BIG PICTURE HERE
22   AND THAT THERE'S MORE THAN A CIVIL CASE GOING ON NOW.
23           MS. HEALY:  AND I UNDERSTAND, YOUR HONOR.
24           THE COURT:  RIGHT?  AND SO IF YOU LOOK AT THE
25   FACTS -- I'LL GIVE YOU THE OPPORTUNITY TO ARGUE IT -- THEY
```

1  DON'T LOOK GOOD.  THEY DON'T LOOK GOOD.  YOU LOOK AT WHAT THE
2  FACTORS ARE IN A FRAUDULENT TRANSFER, AND THEY LOOK VERY BAD.
3  AND SO I GUESS I JUST -- AS A PRACTICAL MATTER, I DON'T
4  UNDERSTAND WHY THAT PROBLEM IS NOT JUST FIXED.  I DON'T
5  UNDERSTAND WHY THE PARENTS DON'T JUST GIVE IT BACK -- IT'S NOT
6  GREAT, IT'S LIKE $20,000, RIGHT?
7           **MS. HEALY:**  OVER 30,000 TO PEOPLE OTHER THAN
8  MR. FRERE.
9           **THE COURT:**  RIGHT.  I DON'T UNDERSTAND.  WHY NOT JUST
10 GIVE IT BACK?  LIKE, WHY ARE WE HAVING THIS FIGHT AT ALL?
11          **MS. HEALY:**  AGAIN, WITH RESPECT TO MR. FRERE, WHO I
12 DO REPRESENT, HE HAS MADE EFFORTS TO GIVE BACK THE FUNDS THAT
13 ARE IN --
14          **THE COURT:**  WHAT EFFORTS HAS HE MADE TO HAVE HIS
15 PARENTS OR HIS SON GIVE THE MONEY BACK, BECAUSE I HAVE NOTHING
16 HERE.  AND, OF COURSE, I'M NOT GOING TO GET ANYTHING FROM HIM
17 BECAUSE HE'S NOW FACING CRIMINAL CHARGES, AND SO HE CAN'T SAY
18 ANYTHING.  I UNDERSTAND.
19          BUT I CAN'T ACCEPT THAT.  THE INFERENCE TO BE DRAWN
20 IS THAT HE'S MADE NO EFFORTS TO HAVE HIS PARENTS OR HIS BROTHER
21 GIVE THE MONEY BACK, AND THERE'S ABSOLUTELY ZERO EVIDENCE IN
22 FRONT OF ME THAT THERE WAS ANY LEGITIMACY TO THAT, A REASON
23 WHY --
24          **MS. HEALY:**  AND, AGAIN, YOUR HONOR, I THINK YOU
25 ACTUALLY PUT YOUR FINGER ON THE ISSUE HERE.

1  WE ARE HERE ON A REQUEST TO FIND MR. FRERE IN
2  CONTEMPT, NOT ON A CASE INVOLVING FRAUDULENT TRANSFER. SO IF
3  WE ARE GOING TO BRIEF FRAUDULENT TRANSFER ISSUES AND THERE ARE
4  QUESTIONS ABOUT THIRD PARTIES, THAT'S A DIFFERENT MATTER THAT'S
5  NOT BEFORE THE COURT.
6  **THE COURT:** I UNDERSTAND. WE CAN PUT IT BEFORE THE
7  COURT. I GUESS WHAT I'M SAYING IS WE COULD DO THAT. THAT'S
8  WHY I THINK MAYBE YOU WANT TO HAVE MR. SWANSON HERE BECAUSE
9  MR. SWANSON I DON'T THINK ACTUALLY WANTS THAT BRIEFED. I
10 ACTUALLY THINK HE PROBABLY DOESN'T WANT THE PARENTS HERE BEING
11 QUESTIONED UNDER OATH.
12 WHAT DID MR. FRERE SAY TO YOU? WHY WAS HE
13 TRANSFERRING THAT MONEY TO YOU? (INDISCERNIBLE.) THE
14 CIRCUMSTANCES HAVE CHANGED DRAMATICALLY FOR MR. FRERE.
15 **MS. HEALY:** INDEED.
16 **THE COURT:** IT'S NOT JUST A CIVIL MATTER. AND THAT'S
17 WHY I'M SAYING, JUST FROM A PRACTICAL POINT OF VIEW, I DON'T
18 UNDERSTAND WHY WE NEED TO GO THROUGH ALL THIS, FRANKLY, WHY THE
19 RECEIVER NEEDS TO INCUR THOSE KINDS OF FEES AND COSTS, BECAUSE
20 I CAN'T IMAGINE THAT IS IN YOUR CLIENT'S INTEREST AT THE
21 MOMENT.
22 **MS. HEALY:** POINT TAKEN, YOUR HONOR.
23 **THE COURT:** OKAY?
24 SO WHAT I WANT TO DO THEN IS -- I CAN'T GRANT THE
25 MOTION NOW FOR THOSE REASONS THAT YOU SAY, SO I COULD SET

```
 1   ANOTHER -- YOU KNOW, YOU CAN FILE A SUPPLEMENTAL BRIEF THAT
 2   ACTUALLY PUTS FORTH -- YOU'RE GOING TO HAVE TO EXPLAIN -- MAYBE
 3   I DO HAVE THE AUTHORITY TO FIND IT WAS A FRAUDULENT TRANSFER
 4   ABSENT THERE BEING A CLAIM, LIKE, AMENDING YOUR COMPLAINT OR
 5   ANYTHING LIKE THAT.  THAT'S WHAT I'M TROUBLED BY.  I JUST DON'T
 6   KNOW.  AND -- BUT ON THE -- AND THEN I'LL GIVE YOU AN
 7   OPPORTUNITY TO RESPOND.
 8           BUT I GUESS WHAT I'M SAYING IS I DON'T KNOW WHY WE
 9   SHOULD DO THAT.  AND I UNDERSTAND THAT MR. FRERE MIGHT NOT WANT
10   TO BE HERE OR WOULDN'T SPEAK, BUT WHY SHOULDN'T WE HAVE THE
11   PARENTS OR THE SON COME IN AND TELL ME UNDER OATH WHY THEY
12   WON'T GIVE THE MONEY BACK.  FOR ALL I KNOW, THEY DON'T EVEN
13   KNOW AND HAVEN'T EVEN BEEN ASKED TO GIVE THE MONEY BACK.  BUT I
14   DON'T KNOW THAT WE WANT THAT.  I DON'T KNOW THAT YOUR CLIENT
15   WANTS THAT.
16           I GUESS WHAT I'M SAYING IS, IN LIGHT OF AT ALL
17   CIRCUMSTANCES, I DON'T UNDERSTAND WHY THIS LITTLE PROBLEM
18   DOESN'T JUST GO AWAY -- THAT'S WHAT I'M FIGURING OUT, BECAUSE I
19   THINK IT COULD MAKE EVERYTHING MUCH WORSE FOR NO REASON.  IT'S
20   A FIGHT HE DOESN'T NEED TO HAVE.  HE HAS A BIGGER FIGHT TO
21   FIGHT AT THE MOMENT.
22           SO LET'S SET A BRIEFING SCHEDULE.  HOWEVER, YOU
23   SHOULD TALK -- IS IT MR. MCNAMARA?
24           **MR. McNAMARA:**  YES, YOUR HONOR.
25           **THE COURT:**  TALK TO MR. MCNAMARA, AND MAYBE IN THE
```

1  MEANTIME, THE WHOLE THING CAN GO AWAY. ALL RIGHT?
2          NOW, WE DO HAVE THE ISSUE, THOUGH, THAT THERE'S
3  $300,000 OUT THERE AND HOW DO WE MAKE SURE THAT MONEY IS NOT
4  DISSIPATED IN THE MEANTIME?
5          **MS. HEALY:** WELL, SO, YOUR HONOR, THE FUNDS THAT
6  MR. FRERE TRANSFERRED TO HIS OWN PERSONAL ACCOUNT WERE THEN
7  FURTHER TRANSFERRED TO THE IRS AND THE FTB.
8          **THE COURT:** YEAH, WELL, WE CAN'T GET THAT BACK.
9          **MS. HEALY:** RIGHT. SO THAT'S GONE.
10         AND HE HAS BEEN TAKING STEPS TO TRANSFER FUNDS IN HIS
11  PERSONAL BANK ACCOUNT TO MR. MCNAMARA TO MAKE PAYROLL FOR THE
12  EMPLOYEES; HOWEVER, MR. FRERE DOESN'T HAVE HIS DRIVER'S LICENSE
13  RIGHT NOW. THE FBI HAS THAT. SO HE CAN'T GO INTO ONE OF THE
14  BANKS AND MAKE A TRANSFER BECAUSE HE HAS NO I.D. SO WE HAVE
15  THAT HANGUP, WHICH, HOPEFULLY, WILL BE RESOLVED VERY SOON.
16         **MR. McNAMARA:** YOUR HONOR, JUST A COUPLE OF POINTS.
17         ONE, THE MONEY IS FUNGIBLE, AND, AS THE FBI AGENT'S
18  DECLARATION INDICATES, HE'S GOT $7 MILLION IN LUXEMBOURG. HE
19  CLEARLY HAS THE ABILITY TO RECALL $300,000 EVEN, IF IT'S NOT
20  THIS PRECISE $300,000.
21         **THE COURT:** NO, NO, NO. I UNDERSTAND. I DON'T THINK
22  IT MATTERS. WE KNOW IT WAS GIVEN TO THE IRS.
23         **MR. McNAMARA:** RIGHT. YEAH. WHETHER IT WAS GIVEN TO
24  THE IRS IT'S UNCLEAR TO ME.
25         **THE COURT:** IT'S ALLEGED THAT IT WAS.

1  **MR. McNAMARA:** RIGHT, BECAUSE WE'VE GOT A TRANSFER TO
2  THE IRS THAT CAME OUT OF A DIFFERENT ACCOUNT THAN THE MONEY WAS
3  PUT IN.  REGARDLESS, IT REALLY DOESN'T MATTER.
4  　　　　　SECONDLY -- AND THIS IS LEADING INTO OUR ISSUE ABOUT
5  THE STIPULATION WE PRESENTED TO THE COURT YESTERDAY ABOUT
6  GETTING PAYROLL DONE.  I'M DOING MY BEST TO GET THESE EMPLOYEES
7  PAID.
8  　　　　　**THE COURT:** YES.  AS WE KNOW, I'VE BEEN HEARING FROM
9  THEM.
10 　　　　　**MR. McNAMARA:** YES, I KNOW.  I KNOW.  LOOK, I HAVE
11 BEEN ASKING FROM THE VERY FIRST DAY I WALKED IN, I TALKED TO
12 DEFENSE COUNSEL, I INDICATED, YOU KNOW, I'VE DONE THIS BEFORE,
13 I KNOW WHAT THESE ORDERS SAY; IT'S YOUR CLIENT'S OBLIGATION --
14 I FOUND OUT THAT DAY I WENT IN THAT THEY OWED THE EMPLOYEES FOR
15 NINE DAYS.
16 　　　　　I HAVE BEEN PLEADING, CAJOLING, I HAVE BEEN PESTERING
17 DEFENSE COUNSEL.  THEY CAME BACK TO ME ON THE 13TH AND SAID
18 THEIR CLIENT WAS INTERESTED IN TRANSFERRING SOME MONEY TO THE
19 PAYROLL.
20 　　　　　THE ISSUE THAT WE HAVE AT THIS POINT IS ONLY $83,000
21 HAS BEEN TRANSFERRED, AND I KNOW THAT WHAT I -- WHAT DEFENSE
22 COUNSEL HAS BEEN TOLD BY THE CLIENT, APPARENTLY, IS THAT HE
23 CAN'T GET THE REMAINING 60,000 OR 65,000, WHICH WOULD MAKE
24 ALMOST COMPLETE PAYROLL, BECAUSE HE DOESN'T HAVE A DRIVER'S
25 LICENSE AND CAN'T GO TO THE BANK.

1       SCOTT JOINER, THE AUSA ON THE CRIMINAL CASE,
2   CONTACTED ME THIS MORNING TO INDICATE THAT HE HAD OFFERED AS OF
3   TUESDAY TO HAVE MR. FRERE ESCORTED TO THE BANK SO THAT WIRE
4   COULD BE DONE, AND THAT OFFER HAS NOT BEEN TAKEN UP.
5       SO I THINK WE ARE IN A PLACE WHERE THAT CAN AND
6   SHOULD HAPPEN, AND I WOULD LIKE IT TO HAPPEN TODAY.  WE ARE
7   DOING OUR BEST TO GET OUR ARMS AROUND THE ADP PAYROLL PROCESS,
8   AND I WOULD LIKE TO GET -- I DON'T KNOW IF IT'S POSSIBLE.  I
9   WOULD LIKE TO GET EMPLOYEES PAID TOMORROW IF IT'S POSSIBLE, YOU
10  KNOW, GIVEN HOLIDAYS AND ALL THE OTHER THINGS GOING ON.  SO --
11      **MS. HEALY:**  YOUR HONOR, WE WILL -- I DIDN'T KNOW THAT
12  MR. JOINER HAD MADE THAT SUGGESTION.  WE WILL CERTAINLY FOLLOW
13  UP.
14      **THE COURT:**  IT WAS PROBABLY MADE TO MR. SWANSON.  SO
15  I REALLY THINK YOU NEED TO BE COORDINATING VERY CLOSELY WITH
16  MR. SWANSON, BECAUSE, FROM THIS POINT ON, EVERYTHING YOUR
17  CLIENT DOES IN THIS CASE IS RELEVANT TO THE CRIMINAL CASE,
18  RIGHT?
19      **MS. HEALY:**  YES, YOUR HONOR.
20      **THE COURT:**  AND MY GUESS WOULD BE WHEN THAT
21  COORDINATION IS DONE, THAT WE'LL PROBABLY GET PERHAPS MORE -- I
22  MEAN, I DON'T KNOW.  I DON'T KNOW.  BECAUSE THERE'S FIFTH
23  AMENDMENT ISSUES AND ALL THAT KIND OF STUFF, BUT I DON'T KNOW
24  WHAT I COULD DO TODAY.
25      **MR. McNAMARA:**  SO MY SUGGESTION, YOUR HONOR, IS THAT

1  I WORK WITH DEFENSE COUNSEL, WE SET UP A BRIEFING SCHEDULE, A
2  BRIEFING SCHEDULE WHICH WILL ALLOW THEM THE OPPORTUNITY TO
3  CONTACT THEIR CLIENT.  PERHAPS WE SOLVE THIS PROBLEM WITHOUT
4  FURTHER EXPENSE.
5       SO I -- WE'VE HAD A GOOD WORKING RELATIONSHIP.  I'M
6  SURE WE CAN SORT OUT DATES THAT MAKE SENSE FOR EVERYBODY.  AND,
7  AGAIN, I'M, LIKE THE COURT, HOPEFUL THAT CAN BE DONE.
8       **THE COURT:**  OKAY.  I'M ACTUALLY HERE NEXT WEEK,
9  WEDNESDAY, THURSDAY, AND FRIDAY.  SO SHOULD ANYTHING ARISE
10 URGENTLY -- I'M HOPING YOUR CLIENT WON'T DO THAT, RIGHT?  THEN
11 CONTACT MS. MEANS, AND WE CAN GET ON CALENDAR IF NEED BE, AND
12 THROUGH THE FOLLOWING WEEK AS WELL.
13      **MR. McNAMARA:**  THANK YOU, YOUR HONOR.
14      **MS. HEALY:**  THANK YOU, YOUR HONOR.  WE HOPE WE DON'T
15 HAVE TO COME BACK HERE.
16      **THE COURT:**  NO, I DON'T THINK SO ACTUALLY, BECAUSE I
17 THINK ACTUALLY THE RIGHT RESULT WORKS FOR -- IS IN EVERYONE'S
18 INTEREST AT THIS POINT GIVEN THE SITUATION.
19      SO I'M JUST GOING TO CONTINUE THE MOTION NOW UNTIL
20 PARTIES SUBMIT A STIPULATION REGARDING FURTHER BRIEFING OR
21 PERHAPS A STIPULATION THAT IT'S NO LONGER NECESSARY.
22      **MS. HEALY:**  THANK YOU, YOUR HONOR.
23      **MR. McNAMARA:**  THANK YOU, YOUR HONOR.
24      **THE COURT:**  ALL RIGHT.  THANK YOU.
25      (PROCEEDINGS ADJOURNED AT 9:43 A.M.)

|     |                                                                                  |
| --- | -------------------------------------------------------------------------------- |
| 1   | **CERTIFICATE OF TRANSCRIBER**                                                   |
| 2   |                                                                                  |
| 3   | I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT                               |
| 4   | TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF                     |
| 5   | THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE                    |
| 6   | U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE                     |
| 7   | PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE                  |
| 8   | ABOVE MATTER.                                                                    |
| 9   | I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,                                 |
| 10  | RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN                  |
| 11  | WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT                        |
| 12  | FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE                       |
| 13  | ACTION.                                                                          |
| 14  |                                                                                  |
| 15  | */s/ jncolumbini*                                                                |
| 16  | JOAN MARIE COLUMBINI                                                             |
| 17  | JANUARY 7, 2019                                                                  |