UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FINANCIAL BENEFITS CENTER, et al.,<br><br>Defendants. | Case No. 18-cv-00806-SBA   (JSC)<br><br>**ORDER RE: APPLICATION OF RECEIVER FOR ORDER APPROVING FEES AND EXPENSES OF THE RECEIVER AND HIS PROFESSIONALS**<br><br>Re: Dkt. No. 212 |

On November 29, 2018, the district court issued an order granting the motion of the Federal Trade Commission ("FTC" or "Plaintiff") for preliminary injunction against Defendants American Financial Benefits Center ("AFBC") and Financial Education Benefits Center ("FEBC") (together, "Corporate Defendants"), and Brandon Frere.[1] (Dkt. No. 186.)[2] The court's order ("PI Order") appointed Thomas McNamara as Receiver for the Corporate Defendants, granting him "full powers of an equity receiver." (Dkt. No. 187 at 6.) The district court subsequently referred all matters arising out of the performance of the Receiver's duties to the undersigned. (Dkt. No. 190.) Now pending before the Court is the Receiver's first interim application for fees and expenses for the period of November 29, 2018 through January 15, 2019. (Dkt. No. 212.) The application is unopposed. After careful consideration of the Receiver's application, declarations, and supporting invoices, having had the benefit of oral argument on March 28, 2019, and

---

[1] On February 4, 2019, the district court granted a nine-month stay of this action as to Defendant Frere based on the parallel criminal action against him pending in this District. (Dkt. No. 214 at 2 (citing *United States v. Frere*, Case No. 3:18-mj-71724-SK (N.D. Cal.)).)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

considering the Federal Trade Commission's support, the Court GRANTS the application.

## BACKGROUND

The PI Order authorizes the Receiver to "[c]hoose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order."  (Dkt. No. 187 at 6.)  The PI Order further provides for compensation of the Receiver and those hired by him, stating:

> IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver as herein authorized, including, but not limited to, counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by the Corporate Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than ninety (90) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

(Dkt. No. 187 at 12.)  Thus, the PI Order allows for payment of "periodic" or interim fees upon the Receiver's request to the Court.

## LEGAL STANDARD

"As a general rule, the expenses and fees of a receivership are a charge upon the property administered." *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994) (citing *Atl. Trust Co. v. Chapman*, 208 U.S. 360, 375-76 (1908)).  "These expenses include the fees and expenses incurred by a receiver and professional retained by a receiver to assist in the performance of the receiver's duties." *SEC v. Nationwide Automated Sys., Inc.*, No. CV 14-07249 SJO (FFMx), 2018 WL 1918622, at *2 (C.D. Cal. Feb. 12, 2018).  The court that appoints "the receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys." *Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934).

Receivers and the professionals who assist them should be "reasonably, but not excessively compensated for their efforts to benefit the receivership estate." *SEC v. Small Bus. Capital Corp.*, Case No. 12-CV-03237 EJD, 2014 WL 3920320, at *2 (N.D. Cal. Aug. 7, 2014) (internal

1  quotation marks and citation omitted). "'[I]n receivership situations, lawyers should be awarded

2  moderate fees and not extravagant ones.'" *Id.* (quoting *SEC v. Byers*, 590 F. Supp. 2d 637, 648

3  (S.D.N.Y. 2008)). Thus, "[t]he Receivership and any professionals assisting the Receiver should

4  charge a reduced rate to reflect the public interest involved in preserving funds held in the

5  receivership estate." *Id.* (citing *Byers*, 590 F. Supp. 2d at 646-47).

6       In determining the amount of a fee award, courts should consider the "'economy of

7  administration, the burden that the estate may be able to bear, the amount of time required,

8  although not necessarily expended, and the overall value of the services provided to the estate.'"

9  *Id.* (quoting *In re Imperial "400" Nat., Inc.*, 432 F.2d 232, 237 (3rd Cir. 1970)).

## DISCUSSION

11       The Receiver requests the following compensation: (1) "$107,473.50 fees and $5,366.03

12  expenses of the Receiver and staff to be paid to Thomas W. McNamara dba Regulatory

13  Resolutions"; (2) "$206,920.50 fees and $8,623.70 expenses of the Receiver's counsel,

14  McNamara Smith LLP"; (3) "$5,206.25 fees and $1,623.90 expenses of the Receiver's computer

15  forensic expert, Hadron Computer Forensics & Investigations." (Dkt. No. 212 at 2.) In total, the

16  Receiver requests $335,213.88 in his first interim application.

17       The Receiver submits declarations in support of his application detailing the work

18  performed and fees and expenses incurred by the Receiver and his staff, his counsel, and his

19  computer forensic consultant. (*See* Dkt. Nos. 212-1 & 220.) The Receiver also submits exhibits

20  consisting of a "receipts and disbursements summary" and invoices from Regulatory Resolutions,

21  McNamara Smith LLP, and Hadron Computer Forensics & Investigations. (*See* Dkt. No. 212-1,

22  Exhs. 1-4.) The invoices are sufficiently detailed, and the services rendered were necessary to

23  administer the receivership. Further, the Receiver attests that the fees he incurred and those

24  incurred by his Deputy Receiver reflect a discounted hourly rate, (*see* Dkt. No. 212-1 at ¶¶ 5a-b),

25  and that the hourly rates and fees of his counsel at McNamara Smith LLP reflect a similar

26  discount, (*see* Dkt. No. 220 at ¶¶ 5-6).

27       According to the Receiver, "[t]he receivership bank account has a current balance of

28  $575,945.93" as of February 1, 2019. (Dkt. No. 212-1 at ¶ 4.) The Receiver attests that he does

"not anticipate additional significant fees or expenses" going forward, and "[a]bsent a material development," both his fees and his attorneys' fees "will continue to taper down." (Dkt. No. 220 at ¶¶ 8, 11.) The approximate fees and expenses incurred outside the time frame covered by this application support the Receiver's assertions. (*See id.* at ¶¶ 7, 9 (stating that for the two and one-half month period not included in this application (January 16, 2019 to March 28, 2019), the total "current unbilled fees and expenses for" both the Receiver and his staff, and his counsel McNamara Smith are approximately $64,000 in fees and $8,000 in expenses).)

In sum, the Court is satisfied that the requested fees and expenses "reasonably, but not excessively" compensate the Receiver and his professionals "for their efforts to benefit the receivership estate." *See Small Bus. Capital Corp.*, 2014 WL 3920320, at *2.

**CONCLUSION**

The Court grants the Receiver's first interim application for fees and expenses in the amount of $335,213.88.

**IT IS SO ORDERED.**

Dated: March 29, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

4