UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FINANCIAL BENEFITS CENTER, et al.,<br><br>Defendants. | Case No. 18-cv-00806-SBA (JSC)<br><br>**ORDER ON APPLICATION FOR DISCHARGE OF RECEIVER AND APPROVAL OF FINAL FEE APPLICATION**<br><br>Re: Dkt. No. 247 |

On November 29, 2018, the district court issued an order granting the motion of Plaintiff Federal Trade Commission ("FTC") for preliminary injunction against Defendants American Financial Benefits Center ("AFBC"), AmeriTech Financial, and Financial Education Benefits Center ("FEBC") (together, "Corporate Defendants"), and Brandon Frere.[1] (Dkt. No. 186.)[2] The court's order ("PI Order") appointed Thomas W. McNamara as Receiver for the Corporate Defendants, granting him "full powers of an equity receiver." (Dkt. No. 187 at 5.) The district court subsequently referred all matters arising out of the performance of the Receiver's duties to the undersigned. (Dkt. No. 190.) On March 29, 2019, the Court granted the Receiver's first interim application for fees and expenses for the period of November 29, 2018 through January 15, 2019, in the amount of $335,213.88. (Dkt. No. 221.) On February 11, 2020, the Court granted the Receiver's second interim application for fees and expenses for the period of January 16, 2019

---

[1] On February 4, 2019, the district court granted a nine-month stay of this action as to Defendant Frere based on the parallel criminal action against him pending in this District. (Dkt. No. 214 at 2 (citing *United States v. Frere*, Case No. 3:18-mj-71724-SK (N.D. Cal.)).) The district court subsequently broadened the stay to include the Corporate Defendants and extended it pending the sentencing of Defendant Frere. (Dkt. Nos. 226, 234, 241.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

through November 30, 2019, in the amount of $123,432.95.  (Dkt. No. 237.)  On November 17, 2020, the district court granted the stipulated order for permanent injunction and monetary judgment, closing the civil case, (Dkt. No. 244), and setting a deadline of May 17, 2021 to complete the receivership, (*id.* at 12).

Now before the Court is the Receiver's final report and application for discharge of receiver and approval of final fee application, covering the period of December 1, 2019 through April 30, 2021.  (Dkt. No. 247.)  The application is unopposed.  After careful consideration of the Receiver's application, declaration, and supporting exhibits, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and therefore VACATES the June 17, 2021 hearing.  For the reasons explained below, the Court APPROVES the final report, GRANTS the application for discharge, and GRANTS the final fee application.

## LEGAL STANDARD

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (internal citations and quotation marks omitted).  "A district judge simply cannot effectively and successfully supervise a receivership and protect the interests of its beneficiaries absent broad discretionary power." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).

"As a general rule, the expenses and fees of a receivership are a charge upon the property administered."  *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994) (citing *Atl. Trust Co. v. Chapman*, 208 U.S. 360, 375-76 (1908)).  "These expenses include the fees and expenses incurred by a receiver and professionals retained by a receiver to assist in the performance of the receiver's duties."  *SEC v. Nationwide Automated Sys., Inc.*, No. CV 14-07249 SJO (FFMx), 2018 WL 1918622, at *2 (C.D. Cal. Feb. 12, 2018).  The court that appoints "the receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys."  *Drilling & Expl. Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934).

Receivers and the professionals who assist them should be "reasonably, but not excessively compensated for their efforts to benefit the receivership estate."  *SEC v. Small Bus. Cap. Corp.*,

No. 12-CV-03237 EJD, 2014 WL 3920320, at *2 (N.D. Cal. Aug. 7, 2014) (internal citations and quotation marks omitted). "'[I]n receivership situations, lawyers should be awarded moderate fees and not extravagant ones.'" *Id.* (quoting *SEC v. Byers*, 590 F. Supp. 2d 637, 648 (S.D.N.Y. 2008)). Thus, "[t]he Receiver and any professionals assisting the Receiver should charge a reduced rate to reflect the public interest involved in preserving funds held in the receivership estate." *Id.* (internal citations and quotation marks omitted).

In determining the amount of a fee award, courts should consider the "'economy of administration, the burden that the estate may be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services provided to the estate.'" *Id.* (quoting *In re Imperial "400" Nat., Inc.*, 432 F.2d 232, 237 (3d Cir. 1970)).

**DISCUSSION**

**I.     Application for Discharge**

The Receiver applies for discharge on the basis that the underlying case is resolved as to all Defendants and the Receiver has completed his duties as defined in the PI Order. (Dkt. No. 247 at 12.) The PI Order directed and authorized the Receiver to perform a variety of duties to take control of Corporate Defendants' business during the litigation. (*Id.* at 5-8.) The PI Order stated it would expire upon entry of final judgment, (*id.* at 13), which was entered on November 17, 2020. (Dkt. No. 244.) The application for discharge states that if the final fee application is granted in full and the requested reserve is approved, $221,881.12 net cash will be available for immediate transfer to the FTC. (Dkt. No. 247 at 12.)

The Receiver attests that he has completed his duties as defined in the PI Order, including securing Corporate Defendants' offices, analyzing the business operations, determining that the business could not operate legally and profitably, communicating with consumers, liquidating available assets, recovering assets, and considering clawback actions. (*Id.* at 4-11.) The Receiver states that resolution of the Corporate Defendants' employee retirement plan is incomplete because six participants have yet to distribute or rollover their funds. (*Id.* at 11.) The retirement plan was set to terminate, and the remaining participants to rollover, shortly after the May 17, 2021 receivership deadline. (*Id.*) Accordingly, the Receiver seeks to retain the right to execute

federal or state returns or other forms relating to the retirement plan after his discharge. (*Id.*)

Notwithstanding the retirement plan rollover, the Court is satisfied that the Receiver has completed the duties contemplated in the PI Order and that discharge is appropriate.

**II.     Final Fee Application**

The PI Order authorizes the Receiver to "[c]hoose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order." (Dkt. No. 187 at 6.) The PI Order further provides for compensation of the Receiver and those hired by him, stating:

> IT IS FURTHER ORDERED that the Receiver and all personnel hired by the Receiver as herein authorized, including, but not limited to, counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by the Corporate Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than ninety (90) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

(*Id.* at 12.) Thus, the PI Order allows for payment of "periodic" or interim fees upon the Receiver's request to the Court.

The Receiver requests the following compensation: (1) "$30,370.50 fees and $4,044.21 expenses to the Receiver and his staff payable to TWM Receiverships Inc., dba Regulatory Resolutions"; and (2) "$16,045.00 fees and $69.64 expenses to Receiver's counsel McNamara Smith LLP." (Dkt. No. 247 at 12.) In total, the Receiver requests $50,529.35 in his final application. (*Id.* at 2.) The Receiver also requests authorization to reserve $10,000.00 for "final administrative costs, *e.g.*, document and electronics storage costs, removal and destruction of computer hard drives, and document destruction costs." (*Id.* at 12.) The Receiver proposes that, 120 days after this Order, unexpended funds from the reserve will be transferred to the FTC. (*Id.*)

The Receiver submits a declaration in support of his application detailing the work

4

performed and fees and expenses incurred by the Receiver, his staff, and his counsel. (Dkt. No. 247-2.) The Receiver also submits invoices from Regulatory Resolutions and McNamara Smith LLP for the time period at issue. (Dkt. Nos. 247-3, 247-4.) The Court finds that the invoices are sufficiently detailed, and the services rendered were necessary to administer the receivership.[3] The Receiver attests that the fees he incurred reflect a discounted rate, (*see* Dkt. No. 247-2 at ¶ 6a), and although he does not attest that fees for counsel McNamara Smith LLP reflect a similar discount, the hourly rates for attorneys Mr. Chan and Ms. Gordon and for paralegal Ms. Carroll remain unchanged since the Receiver's first interim application. (*Compare* Dkt. No. 220 at ¶ 5 *with* Dkt. No. 247-2 at ¶ 9.) The Receiver's supplemental declaration in support of the first interim application attested that those attorneys' fees represented a discounted rate. (Dkt. No. 220 at ¶ 5.)

The Receiver also submits a "Receipts and Disbursements Summary" for the receivership bank account during the full course of the receivership. (Dkt. No. 247-1.) The summary itemizes the total receipts and disbursements from November 29, 2018 through April 30, 2021 and indicates that the receivership bank account had a balance of $282,410.47 as of April 30, 2021. (*See id.*) Thus, the Receiver's current request for fees and expenses constitutes slightly less than one fifth of the account balance.

In sum, the Court is satisfied that the requested fees and expenses "reasonably, but not excessively" compensate the Receiver and his professionals "for their efforts to benefit the receivership estate." *See Small Bus. Cap. Corp.*, 2014 WL 3920320, at *2. Additionally, the Court is satisfied that a reserve of $10,000.00 is appropriate to cover final administrative costs.

## CONCLUSION

The Court orders as follows:

1. The Receiver's final report is APPROVED.

---

[3] The Receiver's invoice from Regulatory Resolutions includes seven disbursement entries that fall within the time period of the second interim application for fees. (*See* Dkt. No. 247-3 at 12.) The entries, each listed as "Other: Google G Suite," correspond to the seven months from May 2019 through November 2019 and total $1,094.23. (*See id.*) None of those entries appeared in the second interim application for fees. (*See generally* Dkt. No. 230-2.) Thus, Receiver is not requesting expenses that were already paid.

5

2. The Receiver's final fee application is APPROVED. The Receiver is authorized to make payments as follows: $30,370.50 fees and $4,044.21 expenses to the Receiver and his staff payable to TWM Receiverships Inc., dba Regulatory Resolutions; and $16,045.00 fees and $69.64 expenses to Receiver's counsel McNamara Smith LLP.

3. The Receiver is authorized to retain a reserve of $10,000.00 for final administrative costs, which may be expended without further order of the Court, and after 120 days any unexpended funds shall be transferred to the FTC.

4. Within ten days of this Order, the Receiver shall transfer all remaining funds, less the fees and expenses approved in the final fee application and the approved reserve, in the amount of $221,881.12, to the FTC.

5. For 90 days from the date of this Order, the Receiver shall retain any business records, including electronic media, and computer hard drives of Corporate Defendants now in his possession and shall thereafter destroy those records.

6. With regard to all customer records, defined as any records which contain information provided by a consumer to obtain a financial-related good or service from Corporate Defendants, information about a consumer resulting from any transaction involving a financial-related good or service provided by Corporate Defendants, or information otherwise obtained by Corporate Defendants in connection with providing a financial-related good or service to a consumer ("Customer Records"), the Customer Records will be destroyed in the following manner: (a) paper documents containing Customer Records shall be shredded so that the information cannot be read or reconstructed, and (b) electronic records or media containing Customer Records shall be destroyed or erased so that the information cannot be read or reconstructed.

7. All assets not distributed or otherwise administered by the Receiver as of the closing of the Receivership Estate are deemed abandoned. Abandoned assets may be destroyed or discarded, without regard to title or value, in the sole and absolute discretion of the Receiver.

8. The acts, transactions, and actions of Thomas W. McNamara as Receiver, as disclosed in the pleadings filed with the Court in this matter, are confirmed and approved as being in the best interests of the Receivership Estate.

9. The Court GRANTS Thomas W. McNamara's application for discharge as Receiver, except that in the event that the Receiver must execute federal or state returns relating to the AFBC 401(k) retirement plan and/or execute forms necessary for the distribution of funds from the plan, the Receiver will retain the right to approve the execution of such documents.  Once all such forms are signed, the Receiver is discharged in full without further order of the Court.

10. Thomas W. McNamara is released and exonerated from all further duties, liabilities, and responsibilities as Receiver.  Mr. McNamara and the professionals retained by him as Receiver shall have no personal liability of any nature for any act, omission, or matter pertaining to the receivership.

11. This Court shall retain jurisdiction over any and all matters relating to the Receiver, the receivership, and the Receivership Estate, including any matters relating to the distribution of funds received by the Receiver in connection with his obligations as Receiver or otherwise received after the receivership is closed.  To the extent any dispute arises concerning the Receiver's administration of the Receivership Estate or to the extent any person or entity seeks to pursue or assert any claim or action against the Receiver or any agent, employee, member, officer, independent contractor, attorney, or representative of the Receiver, arising out of or related to this receivership, the Court shall retain jurisdiction to hear and resolve any such dispute or claim.

12. The receivership is terminated.

**IT IS SO ORDERED.**

//

//

//

Dated: June 15, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge